IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

KARRISA CUNNINGHAM                                    PLAINTIFF

V.                          NO. 10-5175

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration         DEFENDANT


### MEMORANDUM OPINION

Plaintiff, Karrisa Cunningham, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying her claim for a period disability and disability insurance benefits (DIB)

under the provisions of Title II of the Social Security Act (Act).  In this judicial review, the Court

must determine whether there is substantial evidence in the administrative record to support the

Commissioner's decision.  See 42 U.S.C. § 405(g).

I.    **Procedural Background:**

Plaintiff protectively filed her application for DIB on March 2, 2007, alleging an inability

to work since March 6, 2006, due to heart surgery 2/11/03, pacemaker; endometriosis with pain;

chronic fatigue; left arm pain and limited range of motion; right arm limited range of motion

(due to pacemaker); and anxiety and panic attacks.  (Tr. 143).   Plaintiff maintained insured

status through September 30, 2007.  (Tr. 4).[1]  An administrative hearing was held on August 28,

---

[1]The ALJ stated that Plaintiff maintained insured status through June 30, 2007.  However, on July 23, 2010, the
Appeals Council found "new and material evidence by the Appeals Council shows the claimant's date last insured
was actually September 30, 2007."  The Appeals Council further found that the record indicated no objective
evidence of any significant worsening of the claimant's impairments in the interim, and that the claimant has
returned to full-time work activity from her alleged onset date of disability and thereafter.  (Tr. 5).

-1-

2008, at which Plaintiff appeared with counsel, and she and her mother testified.  (Tr. 33-81).

By written decision dated October 15, 2008, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe - neurally mediated syncope, anxiety and cardiac dysrhythmia.  (Tr. 89).  However, after reviewing all of the evidence presented, he determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix 1, Subpart P, Regulation No. 4.  (Tr. 89).  The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant would have been unable to have been exposed to extreme temperatures/humidity/microwaves or have been within eighteen inches of magnets, spark plugs or certain electronic devices, such as Ipods or speakers.  Finally, the claimant could have performed only unskilled work where interpersonal contact was incidental to the work performed.

(Tr. 90).  With the help of a vocational expert (VE), the ALJ determined Plaintiff could perform other work as a small product machine operator, small product assembler, and food order clerk.  (Tr. 93).

Plaintiff then requested a review of the hearing decision by the Appeals Council, and on July 23, 2010, the Appeals Council issued its decision finding that Plaintiff was not entitled to a period of disability and to DIB through September 30, 2007, the date Plaintiff was last insured.  (Tr. 5).  Subsequently, Plaintiff filed this action.  (Doc. 1).  This case is before the undersigned pursuant to the consent of the parties.  (Doc. 5).  Both parties have filed appeal briefs, and the case is now ready for decision.  (Docs. 13, 14).

## II.    Evidence Presented:

Plaintiff was born in 1985, received her GED, and had two weeks of training as a CNA.

-2-

(Tr. 40, 139).  Plaintiff previously worked at a day care center for seven months until March of 2006.

Plaintiff had a permanent pacemaker inserted at Washington Regional Medical Systems in Fayetteville, Arkansas.  (Tr. 195).  The medical records also reflect that on September 15, 2005, Plaintiff complained of "menses problems" to Creekside Center for Women, and that endocervical cells were present.  (Tr. 198-199).

On August 29, 2006, Plaintiff complained to her treating physician, Dr. Mark Olsen, of neck pain, problems catching her breath and feeling nauseous.  (Tr. 218).  He assessed her with muscle tension headache and anxiety syndrome.  (Tr. 218).

On September 1, 2006, Plaintiff presented to Dr. James C. Cooper, of the Northwest Arkansas Heart & Vascular Center, PA, complaining of recurrent lightheaded spells.  (Tr. 201). Plaintiff reported to Dr. Cooper that she never had syncope[2] since she received her pacemaker, and that she occasionally felt her pacemaker "pulsing."  Plaintiff also reported that she stopped her beta blocker medicines over a year previously on her own volition.  (Tr. 201).  Dr. Cooper assessed Plaintiff with:

1. History of malignant neurally mediated syncope.
2. No evidence of high atrial or ventricular rate episodes.
3. Normal pacemaker function.
4. "Pulsing" etiology undetermined.

(Tr. 201).

On May 17, 2007, a Mental Diagnostic Evaluation was performed by Sheldon T. McWilliams, Jr., Ph.D., a clinical psychologist.  (Tr. 237-243).  Dr. McWilliams reported that

---

[2]Syncope - A temporary suspension of consciousness due to generalized cerebral ischemia; called also *faint.* Dorland's Illustrated Medical Dictionary 1845 (31 ed. 2007).

AO72A
(Rev. 8/82)

Plaintiff was prescribed Atenolol 25 mg, one tablet twice a day.  (Tr. 238).  However, Dr. McWilliams reported that Plaintiff had a problem complying with the doctor's orders, and that Plaintiff said she took only one-half of a tablet at bedtime because she was fearful of developing side effects.  (Tr. 238).  Plaintiff reported to Dr. McWilliams that she did not require any assistance with any daily activities, and that after working seven months at a day care center, she quit due to confrontations with her supervisor over her absenteeism. (Tr. 238).  Dr. McWilliams stated that it was clear that an anxiety disorder was present and associated with her cardiac condition.  (Tr. 241).  He also stated that environmental stressor/factors could exacerbate the anxiety to the level of panic.  (Tr. 241).  Dr. McWilliams diagnosed Plaintiff as follows:

| | |
|---|---|
| Axis I: | Panic disorder without agoraphobia |
| | Anxiety disorder due to cardiac problems with depressive features |
| Axis II: | No diagnosis on Axis II |
| Axis V: | 57-67 |

(Tr. 241).  Plaintiff also reported that she performed all daily activities autonomously, and continued to participate in social groups when her anxiety was not excessive.  Dr. McWilliams felt that Plaintiff seemed capable of adequate and socially appropriate communication and interaction despite her apprehensiveness and slight anxiety; that her ability to work consistently in an efficient and productive manner was doubtful as suggested by her reported incapacity when she experienced panic attacks; that she had the ability to sustain attention and concentration on basic tasks except during a panic attack; that her persistence seemed adequate; and that she had the capacity to complete work-like tasks within an acceptable time frame.  (Tr. 241-42).

On May 23, 2007, a General Physical Examination was conducted by Dr. C.R. Magness. (Tr. 209-215).  At that time, Plaintiff's medication was Atenolol.  (Tr. 209).  She reported chest

AO72A
(Rev. 8/82)

pain in her right pectoral area secondary to her pacemaker. (Tr. 210).  All ranges of motion were

normal. (Tr. 212).  Dr. Magness reported muscle weakness in her right upper extremity - a "1"

out of a scale of 1-5. (Tr. 213).  Dr. Magness diagnosed Plaintiff as follows:

> Malignant neurally mediated syncope
> Beta Blockage
> Pacemaker
> Endometriosis
> Anxiety/panic disorder
> Fatigue
> Dx asthma

(Tr. 215).  Dr. Magness reported that Plaintiff had moderate to severe limitations in her ability

to walk, lift and carry, and moderate ability to stand. (Tr. 215).  He also reported that Plaintiff

would be a "good candidate for re-training - sedentary job." (Tr. 215).

On June 7, 2007, a Physical RFC Assessment was completed by Dr. Ronald Crow. (Tr.

229-236).  Dr. Crow concluded that Plaintiff could:

> occasionally lift and/or carry (including upward pulling) 10 pounds; frequently lift and/or
> carry (including upward pulling) less than 10 pounds; stand and/or walk (with normal
> breaks) for a total of at least 2 hours in an 8-hour workday; sit (with normal breaks) for
> a total of about 6 hours in an 8-hour workday; push and/or pull (including operation of
> hand and/or foot controls) unlimited, other than as shown for lift and/or carry.

(Tr. 230).  Dr. Crow also concluded that no postural, manipulative, visual, or communicative

limitations were established, and that Plaintiff should avoid hazards (machinery heights, etc.) -

syncope, neurally mediated. (Tr. 231-233).  Dr. Crow concluded that the medical records

supported a sedentary RFC. (Tr. 236).

A Mental RFC Assessment was completed by Paula Lynch on June 21, 2007. (Tr. 237-

250).  Dr. Lynch found that Plaintiff was not significantly limited in 13 out of 20 categories and

was moderately limited in 7 out of 20 categories. (Tr. 247-48).  She further found that Plaintiff

AO72A
(Rev. 8/82)

was able to perform work where interpersonal contact was incidental to work performed, e.g. assembly work; where complexity of tasks was learned and performed by rote, with few variables and little judgment; and where supervision required was simple, direct and concrete. "(unskilled)." (Tr. 249).

Also on June 21, 2007, Dr. Lynch completed a Psychiatric Review Technique form. (Tr. 251-264). In the report - Dr. Lynch found that Plaintiff had a moderate degree of limitation in: restriction of activities of daily living; difficulties in maintaining social functioning; difficulties in maintaining concentration, persistence, or pace; and had no episodes of decompensation, each of extended duration. (Tr. 261) Dr. Lynch also found that the evidence did not establish the presence of the "C" criterion. (Tr. 262). Dr. Lynch reported that Plaintiff was felt to retain unskilled work capacity. (Tr. 263). Both the Physical RFC Assessment and Mental RFC Assessment were affirmed as written. (Tr. 273-74).

On October 30, 2007, Plaintiff presented herself to Dr. Mark Olsen, complaining of bumps on her vaginal area, and thought they might be razor burns. (Tr. 279). On November 5, 2007, a culture that was taken was positive for herpes simplex. (Tr. 280).

In a March 2, 2007 Disability Report-Adult- Plaintiff reported that at least four days of each month, she was bedridden with heavy bleeding, clotting and severe cramping. (Tr. 143). She also reported that her left arm and right arm had pain and limited range of motion. She stated she had severe anxiety with panic attacks and had chronic, daily fatigue. She had anxiety so severe that she had shortness of breath and could not "catch her breath." As of the date of the report, Plaintiff was only taking Atenonol for her heart condition. She tried Ultracet for pain, but had to stop taking it due to side effects. (Tr. 147). She reported that she started having

-6-

"really bad periods in 9th and 10th grades" and quit the 11th grade to have heart surgery and a pacemaker inserted. (Tr. 149). She also reported that she was in a motor vehicle accident on June 15, 2005 and had a head injury. (Tr. 149).

In a Function Report-Adult-dated April 27, 2007, Plaintiff reported that she took care of her husband, did cooking, cleaning, laundry, and some mornings packed her husband's lunch. (Tr. 152). She also reported that she and her husband took care of their dog. (Tr. 152). She reported no problems with personal care, and went outside periodically throughout the day. She drives a car, watches television, plays computer games, reads, and sometimes has a few friends over to "hang out" and watch movies. (Tr. 155). She reported that she followed written and spoken instructions very well, got along with authority figures fairly well, handled stress moderately and handled changes in routine well. (Tr. 156-57).

In an April 27, 2007 report of Pain and Other Symptoms, Plaintiff stated she had not had to discontinue a medication for her disability because of side effects. (Tr. 160). She also reported that although most pain occurred around her menstrual cycle, occasional pain occurred throughout the rest of the month. (Tr. 160).

At the hearing held on August 28, 2008, Plaintiff testified that she was currently in the position of a leasing agent at an apartment complex. (Tr. 41). Although she had been doing this on a part-time basis for a couple of months, she just began performing this position on a full-time basis the week prior to the hearing. (Tr. 43). She stated that as part of her responsibilities, she did clerical work at a desk, and was not required to be on her feet or do any lifting. (Tr. 41). She stated that she sat at least six to seven of those hours a day, and received 20% off of her rent, on top of her hourly wage of $9 an hour. (Tr. 42). She stated that her employer allowed her to stay

AO72A
(Rev. 8/82)

in the office so that she could get to her mother's apartment, which was nearby, she was allowed rest periods when she needed them,  and she could go lie down when necessary.  (Tr. 46).  She testified that she would be absent an average of four days a month because "I usually cannot get out of bed when my cycle happens."  (Tr. 46).

Plaintiff testified that since her pacemaker was inserted, she had no blackouts, only experienced dizzy and lightheaded spells.  (Tr. 52).  She also testified that she did not take medication for the pain, and was supposed to take 25 milligrams of Atenolol twice a day, but only took half a pill at night.  (Tr. 53).

Plaintiff stated that she was capable of doing household chores as long as she spaced them apart, and occasionally walked her dogs.  (Tr. 57-58).  She said that she could probably walk a football field length at a slow pace. She said that she could not be around microwaves, spark plugs, Ipods, or speakers.  (Tr. 60).  She cannot be within eighteen inches of an Ipod or it would shut the pacemaker off.  (Tr. 63).  She said that she and her husband watched movies, and sometimes went roller skating.  (Tr. 64).

**III.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence

-8-

exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3), 1382(3)(D).  A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience.  See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience

AO72A
(Rev. 8/82)

in light of her residual functional capacity (RFC).  See McCoy v. Schwieker, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

**IV.  Discussion**:

    **A.**      **Subjective Complaints and Credibility Analysis:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints and addressed all of Plaintiff's allegations of pain.  The ALJ stated that after considering the evidence of record:

> the undersigned finds that the claimant's medically determinable impairments could reasonably have been expected to produce the alleged symptoms: however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.

(Tr. 91).  The ALJ stated that the evidence failed to bear out Plaintiff's alleged incapacitation from all work activity from the alleged onset date through the date last insured, and even

-10-

thereafter.  He also stated, and the medical records support, that Plaintiff's syncope and/or lightheadedness had not occurred to any significant degree since Plaintiff's pacemaker was inserted in 2003.  (Tr. 91-92).  The ALJ further found that although Plaintiff had a history of anxiety, any limitations associated with that were accounted for in the RFC, and that no corroborative objective evidence supported a finding that Plaintiff's anxiety ever existed to a disabling degree at any time from the alleged onset date and thereafter, particularly in light of the fact that Plaintiff had recently returned to full-time work.  (Tr. 92).

The Court believes Plaintiff's daily activities are inconsistent with disabling impairments. She reported being able to cook, clean, do laundry, drive, roller skate, and walk her dogs. She also had no problems with personal care.  Although Plaintiff discontinued taking Ultracet because of the side effects, there is no indication that Plaintiff tried or requested different medication for her pain.  In fact, Plaintiff stopped her beta blocker medication on her own, and was not fully compliant with the proper dosage of Altenolol.  "A failure to follow a recommended course of treatment also weighs against a claimant's credibility."  Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005) citing Gowell v. Apfel, 242 F.3d 793, 797 (8th Cir. 2001).  Furthermore, Plaintiff reported that she discontinued taking the Ultracet because of the side effects, but in her April 27, 2007 Social Security Disability Report - Pain and Other Symptoms - she denied having to discontinue a medication because of side effects.  (Tr. 160).

Dr. Magness, who conducted a general physical examination for the social security administration, found Plaintiff had normal range of motion in her cervical and lumbar spine, and all extremities.  (Tr. 212).  He only found muscle weakness in Plaintiff's upper right extremity to be a "1" on a scale of 1-5.  He further found Plaintiff had only moderate to severe limitation

-11-

in her ability to walk, lift and carry, and moderate limitation in her ability to stand.  Dr. Crow, a non-examining physician, found Plaintiff would be able to do sedentary work, and should avoid hazards (machinery, heights, etc.).

Although Plaintiff reported she suffered from anxiety/panic attacks, Plaintiff had no history of formal mental health treatment as an adult, reporting receiving evaluation at age 17 to assess adjustment disorder with depressed mood.  (Tr. 263).  Dr. Sheldon T. McWilliams, Jr., a clinical psychologist, found that Plaintiff seemed capable of adequate and socially appropriate communication and interaction despite her apprehensiveness and slight anxiety; that her ability to work consistently in an efficient and productive manner was doubtful as suggested by her reported incapacity when she experienced panic attacks; that she had the ability to sustain attention and concentration on basic tasks except during a panic attack; that her persistence seemed adequate; and that she had the capacity to complete work-like tasks within an acceptable time frame.

The ALJ gave controlling weight to the consultative physical and mental findings of Drs. Magness and McWilliams, stating that their findings were consistent with the function-by-function restrictions set out in the RFC.  The Court finds this to be appropriate, especially since they are not inconsistent with any other findings by Plaintiff's other medical examiners. Therefore, although it is clear that Plaintiff suffered from some severe impairments, Plaintiff has not established that she was unable to engage in any gainful activity during the relevant time period.  See Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993)(holding that, although plaintiff did have degenerative

-12-

disease of the lumbar spine, the evidence did not support a finding of disabled).

Neither the medical evidence nor the reports concerning Plaintiff's daily activities support Plaintiff's contention of total disability beginning March 6, 2006. Therefore, based upon the records as a whole, the Court finds there is substantial evidence to support the ALJ's credibility findings.

**B. RFC Assessment:**

RFC is the most a person can do despite that person['s] limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In the present case, the ALJ concluded that Plaintiff would be able to perform sedentary work with limitations. In making this determination, the ALJ gave controlling weight to the assessments of Dr. Magness and Dr. McWilliams. There are no other medical records which are inconsistent with their findings. The ALJ included the function-by-function restrictions in the

-13-

RFC, i.e. that Plaintiff would be unable to be exposed to extreme temperatures/humidity/microwaves or be within eighteen inches of magnets, spark plugs or certain electronic devices, such as Ipods or speakers.  He also included that Plaintiff could perform only unskilled work where interpersonal contact was incidental to the work performed.

Plaintiff testified that when she had her menstrual cycle, she would be out of commission for four days because her pain and bleeding were so severe.  However, no physician indicated that her menses problems were such that she was required to miss work for four days per month. Based on the entire evidence of record, the Court finds substantial evidence supports the ALJ's RFC findings.

### D.    Hypothetical Proposed to Vocational Expert:

In his first hypothetical to the VE, the ALJ stated:

> Please assume a younger individual with a high school education;  who can lift and carry 10 pounds occasionally, less than 10 pounds frequently.  The individual can sit for about six hours during an eight-hour workday.  He can stand and walk for about two hours during an eight-hour workday.  The individual is to avoid all exposure to hazards such as unprotected heights, heavy machinery; no exposure to extreme temperatures or humidity.   Consider the individual can perform unskilled work where interpersonal contact is incidental to the work performed ...avoid all exposure to like heavy machinery, but that the individual can have magnets, spark plugs, ipods, things of that nature, no closer than 18 inches to her.....would there be jobs available?

(Tr. 76-80).

In response, the VE answered that there would be jobs that the individual could perform, such as small production machine operator; small product assembler; and a food order clerk.

Plaintiff argues that if Plaintiff's limitations are juxtaposed to the jobs the ALJ said Plaintiff could do, "she is exposed to modern cooking ware that uses microwaves; magnages [sic] in small production assembly and all kinds of electrical devices in small product assembly

-14-

and small product operation." Plaintiff states that she can only reasonably assume that there are all types and kinds of electrical devices in all types of production and that the ALJ failed to match his own limitations to the work that the VE described as work Plaintiff could perform.

The Court has reviewed the three positions the VE testified that Plaintiff would be able to perform. All three positions provide the following details:

> Exposure to Weather: No Present-Activity of condition does not exist
> Extreme Cold: Not Present - Activity or condition does not exist
> Extreme Heat: Not Present - Activity or condition does not exist
> Wet and/or Humid: Not Present - Activity or condition does not exist
> Vibration: Not Present - Activity or condition does not exist
> Atmospheric Cond: Not Present - Activity or condition does not exist
> Moving Mech. Parts: Not Present - Activity or condition does not exist
> Electric Shock: Not Present - Activity or condition does not exist
> High Exposed Places: Not Present - Activity or condition does not exist
> Radiation: Not Present - activity or condition does not exist
> Explosives: Not Present - Activity or condition does not exist
> Toxic Caustic Chem: Not Present - Activity or condition does not exist
> Other Env. Cond.: Not Present - Activity or condition does not exist.

Dictionary of Occupational Titles § § 209.567-014, 715.687-010, 692.685-266.

The Court does not believe there is a conflict between the Plaintiff's limitations and the jobs the ALJ said Plaintiff could do, which take into consideration the Plaintiff's limitations..

Furthermore, in Blackmon v. Astrue, 730 F.Supp. 2d 867, 871 (N.D. Ill. 2010), Plaintiff had a pacemaker implanted, and the ALJ determined that Plaintiff had the RFC to:

> perform light work (sitting 6-8 hours and standing/walking at least 6 hours out of an 8-hour workday, and lifting 10 pounds frequently and 20 pounds occasionally), except that he must avoid concentrated exposure to unprotected heights, moving and hazardous machinery, pulmonary irritants, and temperature extremes.

Id. at 877. With the assistance of VE testimony, the ALJ found that Plaintiff could perform the duties required for food prep, mail clerk, courier and packer positions, although the VE

-15-

expressed some doubt about whether someone with Plaintiff's RFC limitations could perform the duties required of a light cook.  Id. at 884.  The district court found that the ALJ "drew a logical bridge from the evidence of record to her conclusion."  Id.

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ proposed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole.  See Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).

**V.  Conclusion:**

Based on the foregoing, the Court finds that the ALJ's decision is affirmed and Plaintiff's case is dismissed with prejudiced.

IT IS SO ORDERED this 13th day of October, 2011.

/s/ Erin L. Setser
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-16-